UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRITTANI BALL, | ) | CASE NO.  1:14-CV-00355-LW |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE LESLEY WELLS |
| v. | ) | |
| | ) | MAGISTRATE JUDGE McHARGH |
| | ) | |
| OHIO AMBULANCE SOLUTIONS, | ) | |
| LLC, et al., | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendants. | ) | |

## I.    FACTS & PROCEDURAL HISTORY

This matter is before the Court upon the parties' motions for summary judgment on the issues of Family and Medical Leave Act ("FMLA") interference and retaliation, Patient Protection and Affordable Care Act ("PPACA")/ Fair Labor Standards Act ("FLSA") retaliation, constructive discharge, and improper deduction of unpaid break time. Plaintiff voluntarily dismissed her claim for intentional infliction of emotional distress.[1]

Defendants Ohio Ambulance Solutions, LLC, Edward Patriarca, Brenda Lancaster, Christine Foster, and Marie Niebes (hereinafter "Defendant") moved for summary judgment on all counts (Doc. No. 30-1), to which Plaintiff responded with a Memorandum in Opposition (Doc. No. 35), followed by Defendant's Reply in Support of its Motion for Summary Judgment (Doc. No. 38). Plaintiff also moved for Partial Summary Judgment (Doc. No. 31), to which Defendant responded with a Memorandum in Opposition (Doc. No. 36), followed by Plaintiff's Reply in Support of her Motion for Partial Summary Judgment (Doc. No. 39).

---

[1] Defendant alerts the Court that Plaintiff, by and through her attorney, voluntarily dismissed her IIED claim during her deposition. (Ball. Tr. 306).

Since July 2007, Plaintiff, Brittani Ball, has been an employee of Defendant, Ohio Ambulance Solutions, LLC. (Doc. No. 31 at 2.). Plaintiff was a paramedic scheduled on third shift from 10:00 PM to 10:00 AM or 11:00 PM to 11:00 AM, Tuesdays, Wednesdays, and Thursdays. (Doc. No. 30-1 at 10.). According to both parties, Plaintiff was an exemplary employee with a positive employment record. (Doc. No. 31 at 2.).

Defendant has a policy where it automatically deducts a 30 minute unpaid break for each shift. (Doc. No. 30-1 at 10.). On third shift, non-work "posting" time, during which paramedics are waiting for calls, can last the entire shift. (*Id*.). If employees are so busy responding to calls that they do not have time for a break, they are to inform the Company so it does not deduct time for that shift. (*Id*.). Plaintiff advised the Company several times that she had not received a break, and, in turn, the Company claims that it did not deduct time for that shift. (*Id*.). Plaintiff could not recall any days when she did not "post" for at least 30 minutes and the Company still deducted time (*Id*.; Ball Tr. 85-92).

On June 26, 2013, in preparation of her second child's birth, Plaintiff requested leave under the FMLA, which authorizes up to twelve weeks of protected leave for qualified employees. (*Id*.). It is uncontested that, from August 2, 2013 to October 26, 2013, Plaintiff received the full twelve weeks of protected leave. (*Id* at 11.). On October 15, 2013, Plaintiff met with Brenda Lancaster, Human Resources Director, and informed her that she planned to express breast milk while working (a protected activity under the Patient Protection and Affordable Care Act ("PPACA") by way of the Fair Labor Standards Act ("FLSA")). (Doc. No. 30-1 at 11). Ms. Lancaster notified Plaintiff that she was not yet aware of a proper location for Plaintiff to express breast milk during work hours. (*Id*.).

On October 23, 2013, Plaintiff informed Defendant that her doctor had not yet medically cleared her to return to work and that she would need an additional week of leave. (*Id*.). In response, Defendant granted Plaintiff an extra week of leave. (*Id*.).

Both parties agree that Defendant had originally scheduled Plaintiff for third shift on November 5, 2013. (*Id.*; Doc. No. 31 at 2.). However, on November 1, four days prior to her scheduled return, Plaintiff requested an accommodation for lactation breaks on third shift, which included 3 or 4 breaks for 30-45 minutes each. (Doc. No. 30-1 at 11.). Defendant claims that Ms. Lancaster researched the law concerning lactation breaks and determined that, after discussing the matter with co-owner Ed Patriarca, and consulting with the Company's payroll vendor, the breaks had to be "free from interruption." (*Id*.). Since Defendant only had one ambulance in operation on third shift, management was concerned that Plaintiff might have to turn down calls if she had to suddenly respond when she was pumping. (*Id* at 12-13; Lancaster Tr. 81; Patriarca Tr. 31). Management ultimately determined that it could not accommodate Plaintiff's request on third shift. (*Id* at 12.).[2]

Ms. Lancaster e-mailed Plaintiff on November 4, 2013, a day before her scheduled return, to address this problem and explore a potential solution. (*Id* at 14.). Plaintiff responded and rejected Defendant's offer to move to first shift, but proposed a counter-offer.[3] (*Id* at 15.). After consideration, Defendant determined that it also could not accommodate Plaintiff's

---

[2] Plaintiff informs the Court that, although it was not her statutory duty to assist her employer in accommodating her request for lactation breaks, she suggested several options that would allow Defendant to accommodate her request, including expressing breast milk in the back of the ambulance, or scheduling for more overlap between shifts. (Doc. No. 35 at 2: *infra* note 3.).

[3] Defendant states in its Motion for Summary Judgment that, "Plaintiff also slightly modified her requested accommodation by offering to pump once while second shift was still on duty, once while first shift was on duty and once during her unpaid break." (Doc. No. 30-1 at 14; Ball Tr. 186-189; Ball Dep. Exh. 18, pg. 1.).

counteroffer. (*Id* at 15.). Among other things, Defendant was concerned that, under the statute, the back of an ambulance was not a sanitary location to express breast milk. (*Id* at 14.).

Nonetheless,  Plaintiff reported to work on November 5, 2013, and Ms. Lancaster told her, via telephone, that, although she was not on the third shift schedule, the Company was still willing to accommodate her on first shift. (Doc. No. 31 at 2.).[4]  Plaintiff demanded to know if the Company had fired her and a heated debate ensued during which Ms. Lancaster told Plaintiff to leave the premises lest the Company would have someone forcibly remove her. (*Id*.).[5]  Plaintiff claims that she had a right to know her employment status since a day earlier she was on the schedule. (*Id*.).

Defendant states that, under Company policy, it retains the right to change employee's schedules based upon the Company's needs, and for between five and ten hours during third shift, only one ambulance is on duty. (Doc. No. 30-1 at 9; Ball Dep. Exh. 3, pg. 54-56; Lancaster Decl. ¶2, Exh. A; Ball Tr. 30-32, 102-103.) Plaintiff argues that she never received a copy of the employee handbook that describes the scheduling policy, and that Defendant used the terms "permanent" or "regular permanent schedules" on their own internal forms, which prompted her to believe that it could not change her schedule at-will. (Doc. No. 35 at 3; Exh. B.). Nevertheless, on November 6, 2013, Ms. Lancaster removed Plaintiff from the first shift

---

[4] Plaintiff cites a taped recording from November 5, 2013 wherein Ms. Lancaster repeatedly tells Plaintiff, "You're not on the schedule."
[5] In Plaintiff's Motion for Partial Summary Judgment and Opposition to Defendant's Motion for Summary Judgment, she offers taped recordings as evidence that she did not initiate a dispute. Plaintiff also offers deposition testimony from Alyese Newman, one of the dispatchers, which states that Plaintiff did not harass anyone the evening of November 5, 2013, and that the Company treated Ms. Newman more favorably than Plaintiff when Ms. Newman took FMLA leave. (Newman Tr. 7; Lancaster Decl. III ¶3.).  Defendant argues that the two employees "are not similarly situated" since Ms. Newman is a dispatcher. (Doc. No. 38 at 13.).  Nevertheless, Plaintiff never cites any of this evidence in relation to any of her legal arguments. (Doc. No. 31-6; Doc. No. 35 at 3).

schedule because: (1) she was unwilling to work first shift; and (2) the Company needed time to figure out how to accommodate Plaintiff's FLSA request. (Doc. No. 30-1 at 18).

On November 7, 2013, Mr. Patriarca called Plaintiff to inform her that she was not fired or suspended, but was "on hold." (Doc. No. 30-1 at 18.). Ms. Lancaster claims that she did not believe that Plaintiff was returning to work which is why she deactivated Plaintiff's account on the Company email and scheduling system.[6] (Doc. No. 30-1 at 19.).  Ms. Lancaster claims that she did this because the Company pays per user for the system. (*Id*.). After several offers, Defendant finally extended Plaintiff the opportunity to work first or second shift with the third shift pay differential. (*Id*.). Plaintiff never responded to Defendant's repeated offers. (*Id*.). Thereafter, Plaintiff filed suit in the Cuyahoga County Court of Common Pleas, and Defendant removed the case to this Court on February 18, 2014. (Doc. No. 1.). Defendant maintained that Plaintiff was still an employee throughout litigation, and as late as February 10, 2014 and September 17, 2014, continued to offer Plaintiff work on either first or second shift with the third shift pay differential. (Doc. No. 30-1 at 19.).

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the record "shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  Non-moving parties may rest neither upon the mere allegations of their

---

[6] Defendant emphasizes that when Ms. Lancaster used the word "term date" to designate Plaintiff's employment status that it was nothing more than a tracking tool she uses when the Company terminates someone or when an employee resigns, is on a leave of absence, or for any number of other reasons. Also, after receiving Plaintiff's unemployment paperwork on December 4, 2013, Ms. Lancaster changed Plaintiff's employment status to "leave of absence." Lastly, Plaintiff designated on multiple applications for employment, which she completed after her departure from Ohio Ambulance, that she was able to work first shift. (Doc. No. 30-1 at 19 fn. 14.).

pleadings nor upon general allegations that issues of fact may exist.  *See Bryant v. Commonwealth of Kentucky*, 490 F.2d 1273, 1275 (6th Cir. 1974).  The Supreme Court held that:

> …Rule 56(c)[7] mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The evidence need not be in a form admissible at trial in order to avoid summary judgment, but Rule 56 requires the opposing party:

> to go beyond the pleadings and by [his] own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Id.* at 324.

The Sixth Circuit in *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989), interpreted *Celotex* and two related cases, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), and *Matsushita Electric Industrial Co., Ltd. V. Zenith Radio*, 475 U.S. 574 (1986), as establishing a "new era" of favorable regard for summary judgment motions.  *Street* points out that the movant has the initial burden showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.  This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case. *Street*, 886 F.2d at 1479.

The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."  *Id.*  In ruling on a motion for summary judgment, the court must construe the evidence, as well as any inferences to be drawn from it, in the light most

---

[7] Now Civil Rule 56(a).

favorable to the party opposing the motion. *Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 229 (6th Cir. 1990).

Since Ball, as plaintiff, would have the burden of proof at trial, the standard concerning her motion differs slightly. A plaintiff-movant must present evidence that would entitle her to a directed verdict if that evidence were not controverted at trial. If the defendants respond to the motion with controverting evidence which demonstrates a genuine issue of material fact, her motion must be denied. However, if after analyzing the combined body of evidence presented by both parties, the evidence is such that no reasonable jury could find in favor of the defendants, then summary judgment will be entered on behalf of the plaintiff-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). *See also Saab Cars USA, Inc. v. United States*, 434 F.3d 1359, 1368-1369 (Fed. Cir. 2006); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (movant must establish all essential elements of claim or defense); *McGrath v. City of Philadelphia*, 864 F.Supp. 466, 473 (E.D. Pa. 1994) (citing *National State Bank v. Federal Reserve Bank of N.Y.*, 979 F.2d 1579, 1582 (3d Cir. 1992)); *Orozco v. County of Yolo*, 814 F.Supp. 885, 890 (E.D. Cal. 1993).

## III.   LAW & ANALYSIS

### a.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In the Complaint, Plaintiff asserts six claims including (1) FMLA interference; (2) FMLA retaliation; (3) illegal deduction of thirty minute unpaid breaks; (4) constructive discharge; (5) FLSA retaliation; and (6) intentional infliction of emotional distress. Plaintiff has since voluntarily dismissed her sixth claim for intentional infliction of emotional distress. (Doc. No. 30-1 at 8 ft. 1; Ball Tr. 306).

### i.  FMLA Interference

In ¶38 through ¶45 of her Complaint, Plaintiff alleges that Defendant engaged in conduct prohibited by the FMLA, specifically that Defendant failed to notify Plaintiff of her rights under FMLA, improperly removed her from the schedule, instructed her to leave the Company's premises, unlawfully interfered with her right to return to work, and failed to comply with FMLA regulations. (Doc. No. 1-1 at 6).

To establish an FMLA interference claim, Plaintiff must prove that: (1) she was an eligible employee, (2) defendant was an employer as defined by the FMLA, (3) she was entitled to leave under the FMLA, (4) she gave the employer notice of her intention to take leave, and (5) the employer denied the employee FMLA benefits to which she was entitled. *See Edgar v. JAC Products, Inc.*, 443 F.3d 501, 507 (6th Cir. 2006). As in *Edgar*, the parties only dispute prong five of this five-part analysis.

Defendant moved for Summary Judgment, arguing that, on November 4, 2013, it offered Plaintiff both the right to return and to take §207(r) protected lactation breaks if only she would move to first shift, which, it claims, Plaintiff refused to do. (Doc. No. 30-1 at 20.).

Plaintiff raises several arguments in the facts section of her Memorandum in Opposition to Defendant's Motion for Summary Judgment. (Doc. No. 35 at 2-3.). Since Plaintiff does not specifically link these arguments to any of her legal claims, the Court will address them here. Plaintiff argues (1) "Plaintiff Brittani Ball's testimony is taken out of context and misconstrued wholly by Defendants when they state that Ms. Ball understood the scheduling policy contained in the employee handbook"; (2) "Her admission that she has no reason to dispute whether the handbook, and its policies, were in effect in 2013, are not tantamount to knowledge of what the policy was"; and (3) "Ms. Ball requesting clarification on her employment status is hardly 'attempting to start a dispute.'" (*Id.*).

Irrespective of the fact that Plaintiff does not address how either the scheduling policy or evidence of how the dispute unfolded precisely relate to her legal claims, the Court will consider these facts in the light most favorable to Plaintiff when ruling on Defendant's Motion.

Firstly, Defendant argues that Plaintiff cannot claim FMLA interference since she was physically unable to return upon the expiration of her FMLA leave. *See Cehrs v. N.E. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 785 (6th Cir. 1998) (explaining that, since Plaintiff did not return at the end of her FMLA leave, her interference claim fails as a matter of law); *Green v. Alcan Aluminum Corp.,* 198 F.3d 245 (6th Cir. 1999) (unpublished) ("Alcan did not violate Green's FMLA rights because it is undisputed that at the end of her protected leave period Green remained unable to perform the essential functions of her position."); *Soletro v. Natl. Fedn. of Indep. Bus.,* 130 F. Supp. 2d 906, 912 (N.D. Ohio 2001) ("As the Sixth Circuit's decision in *Cehrs* makes clear, where the employee shows no ability to return to work, her claim under the FMLA fails. *Cehrs,* 155 F.3d at 784–85; *see also* 29 C.F.R. § 825.214(b)."). (Doc. No. 30-1 at 28).

Nevertheless, Plaintiff contends that this Court should estop Defendant from arguing that her interference claim fails as a matter of law since it agreed to extend Plaintiff's return date. (Doc. No. 35 at 5);  *See Sorrell v. Rinker Materials Corp.*, 395 F.3d 332, 336 (6th Cir. 2005) (explaining that the Sixth Circuit remanded the case to the district court to determine if equitable estoppel applied); *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 493-94 (8th Cir. 2002) ("estoppel declares that a party who makes a representation that misleads another person, who then reasonably relies on that representation to his detriment, may not deny the representation.") (internal quotation marks omitted). Nevertheless, Plaintiff's estoppel argument is short-lived because Defendant rightly points out that Plaintiff does not offer any evidence that it represented

to her that her extra week of leave was under FMLA, much less that she relied on that alleged misrepresentation. (Doc. No. 38 at 9-10).  Plaintiff argues that Defendant did not "provide any warning to Ms. Ball that her inability to return prior to November 5, 2013, would have any adverse consequences," however, Plaintiff does not offer any legal support suggesting that Defendant has a statutory duty to provide this type of warning, or that an omission of this nature warrants equitable estoppel of Defendant's argument. (Doc. No. 35 at 5.). Since equitable estoppel, in this context, pertains to affirmative misrepresentations and not omissions, Plaintiff's equitable estoppel argument fails. *See Norton-Alcoa*, 293 F.3d at 493-494.

Here, *Green* and *Cehrs* are not entirely analogous because, although Plaintiff did not return at the end of FMLA leave for medical reasons, she was, arguably, able to perform the essential functions of her job when she did return a week later. Both Green and Cehrs were permanently unable to perform essential functions of their respective jobs. *Green*, 198 F.3d at *2; *Cehrs* 155 F.3d at 778.  Here, the dispute is whether Plaintiff's request for lactation breaks constitutes an inability to perform her job. There is also the question of whether Plaintiff's extra week of leave, which Defendant approved, equals a forfeiture of her return rights under FMLA.

Nevertheless, the Court can decide Plaintiff's FMLA interference claim on narrower grounds without determining whether, under *Green* and *Cehrs*, it fails as a matter of law.  In its Reply in Support of its Motion for Summary Judgment, Defendant makes a credible argument under 29 C.F.R. §825.216(a) that Plaintiff had no greater right to reinstatement than if she was continuously employed during the FMLA period. (Doc. No. 38 at 6).

Defendant cites to *Jaszczyszyn v. Advantage Health Phys. Network*, 504 Fed. Appx. 440, 447 (6th Cir. 2012) (unpublished) to justify the reason why it did not return Plaintiff to third shift: "[T]he interference theory does not convert the FMLA into a strict-liability statute because

interference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." (internal quotation marks omitted).

Even assuming Plaintiff was not returning from FMLA leave, Defendant claims that it is undisputed that it still would not have been able to accommodate her §207(r) request on third shift. (Doc. No. 38 at 17). Therefore, the fact that Plaintiff did not return at the end of FMLA leave, coupled with the fact that she knew that Defendant could not accommodate her request on third shift, frustrates her FMLA interference claim. (Ball Tr. 143.; Ball Dep. Exh. 18, p. 3; Ball Tr. 197, 216 ).  Defendant offered Plaintiff the opportunity to return to the same or similar position, but Plaintiff chose to exercise her right to lactation breaks under §207(r), and refused to accept a move to either first or second shift, or give an explanation why she was unable to move to first or second shift. (Ball Tr. 249; Patriarca Decl. ¶4; Ball Tr. 254; Ball Dep. Exh. 23; Ball Tr. 260-261; Ball Dep. Exh. 24).

 Defendant afforded Plaintiff the full twelve weeks of leave, extended her an additional week of leave, and offered her several different opportunities to move to shifts that would allow her to exercise her rights under §207(r). (*Id.*). The only evidence Plaintiff cites to refute these facts is deposition testimony from Alyese Newman, who claims that Defendant treated Plaintiff unfairly. (Newman Tr. 63.).  Further, the only legal authority Plaintiff cites is a plain reading of 29 C.F.R. §825.215, which states that an employer must restore an employee returning from FMLA leave to the same position, pay, benefits, and terms and conditions of employment. (Doc. No. 35 at 6.). Plaintiff does not offer any legal support which states that a co-worker's subjective assessment of "unfair" treatment is evidence of FMLA interference. Further,  Plaintiff's §825.215 citation does not clearly support her argument that  Defendant's accommodations do

11

not act as an "absolute bar" to her interference claim. (Doc. No. 35 at 6.). However, Defendant does not argue that its accommodations act as an "absolute bar" to her claim; it merely signals to the Court that there is no evidence that it "barred" Plaintiff from returning to work. (Doc. No. 38 at 15.).

Thus, Plaintiff does not refute that Defendant had a legitimate reason for disallowing her return to third shift unrelated to her rights under FMLA. *See Edgar*, 443 F.3d at 508 ("Both the statute and the DOL regulation likewise establish that interference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct".).

Although the Court will discuss the FLSA claim separately, considering the nature of Defendant's enterprise, and the fact that it only had one ambulance on third shift, Defendant's argument that Plaintiff's lactation breaks could potentially interfere with calls for emergency response is persuasive. (Doc. No. 30-1 at 8.). Defendant offered Plaintiff the opportunity to move to either first or second shift with the third shift pay differential, and also provided a legitimate reason for why it could not return Plaintiff to third shift. Therefore, under the framework provided for in *Edgar* and *Jaszczyszyn*, Plaintiff's interference claim fails regardless of whether Defendant's actions could be construed as interference because Defendant submitted a valid basis independent of FMLA for why it did not return Plaintiff to her pre-leave position.

Since there is no genuine issue of material fact regarding Plaintiff's FMLA interference claim, the Court should GRANT Defendant's Motion on this claim.

### ii. FMLA Retaliation

In ¶46 through ¶49 of her Complaint, Plaintiff alleges that Defendant retaliated against her for asserting her rights under FMLA by improperly removing her from the schedule, denying

12

her the right to take lactation breaks, and unlawfully advising her that her employment was "on hold." (Doc. No. 1-1 at 7).

To establish a prima facie case of retaliation under the FMLA, Plaintiff must show that: (1) she was engaged in a statutorily protected activity; (2) Defendant knew that she was exercising her FMLA rights; (3) she suffered an adverse employment action; and (4) a causal connection existed between the protected FMLA activity and the adverse employment action. *See Donald v. Sybra, Inc.,* 667 F.3d 757, 761 (6th Cir. 2012)  ("The burden of proof at the prima facie stage is minimal; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity."); *See Dixon v. Gonzales,* 481 F.3d 324, 333 (6th Cir. 2007); *Seeger v. Cincinnati Bell Telephone Co*., LLC, 681 F.3d 274, 283 (6th Cir. 2012).

Since there is no dispute over prongs one or two,  the analysis begins on prong three.  The Sixth Circuit holds employers legally responsible for adverse acts against employees asserting their FMLA rights. *See Mitchell v. County of Wayne*, 337 Fed. Appx. 526, 534 (6th Cir. 2009). Defendant argues that, under prongs three and four, Plaintiff did not suffer an adverse employment action or produce any evidence showing a causal connection between her FMLA leave and any alleged adverse employment action. (Doc. No. 30-1 at 31-33).

 Plaintiff argues that Defendant constructively discharged her, and that the constructive discharge amounts to an adverse employment action. (Doc. No. 35 at 6). Plaintiff does not cite to the record, but does allege that Defendant constructively discharged her by removing her from the schedule and the e-mail system, and by failing to pay her. (*Id.* at 7).

Nevertheless, Plaintiff does not cite any evidence that Defendant retaliated against her as a result of her FMLA leave. Both Plaintiff and Defendant planned for her to return to third shift,

13

and it was only after Plaintiff's request under §207(r) that Defendant determined it could not accommodate Plaintiff on that shift. (Lancaster Tr. 70-73, 80-82, 88; Dozier Tr. 33-36; Patriarca Tr. 29-33.). Further, Defendant eventually offered Plaintiff the opportunity to change shifts with the third shift pay differential during a shift in which it could accommodate her request. (Patriarca Tr. 30-32, 54-57; Dozier Tr. 33-36; Lancaster Tr. 72-85, 140, 162-164; Lancaster Dep. Exh. 12; Ball Tr. 249, Ball Dep. Exhs. 23, 24). In Plaintiff's Memorandum in Opposition, she argues that Defendant's offers for shift changes occurred after litigation commenced, but she includes that fact only for the purpose of informing the Court that the "offers" are evidence that the factfinder may consider when calculating damages. (Doc. No. 35 at 6 fn. 3).

Although Defendant waits until the FLSA section to analogize the FLSA with the ADA, since both claims require evidence of an adverse employment action the Court will consider this line of reasoning when analyzing Plaintiff's FMLA retaliation claim. (Doc. No. 30-1 at 32.). Since there is no case law concerning the relevant provisions of the PPACA, Defendant argues that analogous case law under the ADA shows that Defendant acted appropriately in attempting to accommodate Plaintiff, and that their proposed accommodations preclude any argument that it retaliated against Plaintiff in response to her exercise of FMLA rights. (Doc. No. 30-1 at 25, 32). To demonstrate that Plaintiff did not suffer an adverse employment action, Defendant cites *Smith v. Honda*, 101 Fed. Appx. 20, 25 (6th Cir. 2004), in which the court stated that, "[w]here there is more than one reasonable accommodation, the choice of accommodation is the employer's." (Doc. No. 30-1 at 26.).

Defendant goes on to argue that the reason Ms. Lancaster removed Plaintiff from the schedule was because Plaintiff indicated that she was not willing to work first shift. (Doc. No. 30-1 at 15; Ball Dep. Exh. 18, p.1). Defendant also thought that the back of an ambulance was

14

not a sanitary location for Plaintiff's lactation breaks, and it was unsure how it could legally accommodate Plaintiff's request since it only had one ambulance on duty during third shift. (Doc. No. 30-1 at 24.). Thus, the fact that Plaintiff voluntarily rejected Defendant's numerous offers to move to first or second shift, with the third shift pay differential, is evidence that Plaintiff did not suffer an adverse employment action. (Patriarca Tr. 30-32, 54-57; Dozier Tr. 33-36; Lancaster Tr. 72-85, 140, 162-164; Lancaster Dep. Exh. 12; Ball Tr. 249, Ball Dep. Exhs. 23, 24). Since Plaintiff does not refute this claim with any evidence or authority, there is no genuine issue of fact concerning whether she suffered an adverse employment action, and her FMLA retaliation claim stops there.

But even if Plaintiff did establish that she suffered an adverse employment action, Defendant alerts the Court that Plaintiff does not produce any evidence showing a causal nexus between her FMLA leave and any adverse employment action. (Doc. No. 30-1 at 32.). Plaintiff merely argues that Defendant's refusal to allow her to return to her same pre-leave shift constitutes causation. (Doc. No. 35 at 5.). However, Defendant responds by citing to the Sixth Circuit's declaration that, "the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008).[8] Further, Plaintiff does not put forth any evidence in her Memorandum in Opposition to show that Defendant's explanation was pretext.[9] (Doc. No. 31 at 25.).

---

[8] Plaintiff argues in the fact section of her Memorandum in Opposition that, "[S]he was fearful that she would be terminated if she failed to show up," but she fails to relate this fact to any claim, and actually mischaracterizes her own declaration, which does not mention, in any place, that she was "fearful." (Doc. No. 35 at ; Doc. No. 35-1 at 2.).

[9] Plaintiff attempted to raise new causation and pretext arguments in her Reply in Support of her Motion for Partial Summary Judgment, as well as enter declaration testimony from two previously unidentified witnesses. The Court, as a matter of procedure, already ruled that it will not consider these arguments or testimony when ruling on dispositive motions. (Doc. No. 39 at 2-11); *See* (Doc. No. 44.).

And even though Defendant speculates that Plaintiff was concerned about her childcare needs, Plaintiff never raises the issue, and Defendant accurately opines that it had no obligation to accommodate such needs.  *See McCarty v. City of Eagan*, 16 F. Supp. 3d 1019, 1027-28 (D. Minn. 2014) ("neither the fact of pregnancy itself nor the impending increase in day-care costs constitutes a pregnancy-related condition within the meaning of the ADA. Indeed, pregnancy-related conditions that require employers to make accommodations for employees tend towards the medical rather than the financial."). The mere fact that Plaintiff did not desire to change shifts does not amount to an unreasonable accommodation or an adverse employment action. *See Liner v. Hospital Service District*, 230 Fed. Appx. 361, 364 (5th Cir. 2007) ("because the responsibility for fashioning a reasonable accommodation is shared between the employer and the employee, the employer is not liable under the ADA if the breakdown in the interactive process is traceable to the employee.").

Since Plaintiff does not refute Defendant's argument that she did not suffer an adverse employment action, and since Plaintiff offers no evidence of causation, there is no reason to enquire into pretext, and her FMLA retaliation claim should fail. *See Gembus v. Metrohealth System*, 290 Fed. Appx. 842, 846 (6th Cir. 2008) ( "Gembus has failed to introduce evidence showing that either MetroHealth's stated reason for her termination was false or that retaliation was the actual reason.").

Since there is no genuine issue of material fact regarding Plaintiff's claim that Defendant retaliated against her in response to her exercise of FMLA rights, the Court should GRANT Defendant's Motion as to that claim.

16

### iii. Illegal Deduction of Unpaid Break Time

In ¶50 through ¶57 of her Complaint, Plaintiff alleges that Defendant unlawfully docked her pay in violation of the Fair Labor Standards Act ("FLSA") by using a system that intentionally favors Defendant, and by reducing her pay each shift for thirty minutes regardless of whether she actually took an unpaid meal break. (Doc. No. 1-1 at 7-8).

To prove that Defendant illegally deducted Plaintiff's unpaid breaks, Plaintiff must show that (1) she performed work for which Defendant did not compensate her; (2) that Defendant kept inaccurate time records; and (3) that there is sufficient evidence, by just and reasonable inference, to show the amount and extent of her work. *See Berger v. Cleveland Clinic Found.*, 1:05 CV 1508, 2007 WL 2902907, at *12 (N.D. Ohio Sept. 29, 2007).

Defendant argues that Plaintiff offers no evidence that it illegally deducted unpaid breaks from her pay. (Doc. No. 30-1 at 36). Further, in Plaintiff's deposition, she herself could not recall any days when the Company improperly deducted time from her pay (Ball Tr. 92). Plaintiff admits that she was both aware of Defendant's reporting policy for deduction of unpaid break time, and that she exercised her rights under that policy several times. (Ball Tr. 85-90; Ball Dep. Exhs. 11-14). Since Plaintiff does not offer any evidence in her Opposition brief, much less attempt to address the issue, the Court need not consider this matter further. *See McCrimon v. Inner City Nursing Home, Inc.*, 1:10 CV 392, 2011 WL 4632865, at *5 (N.D. Ohio Sept. 30, 2011) ("Plaintiff's allegations amount to no more than bald assertions that she sometimes worked off the clock. Plaintiff fails to state the number of days, number of hours, or the dates on which this occurred.").

Since there is no genuine issue of material fact regarding Plaintiff's claim of illegal deduction of unpaid break time, the Court should GRANT Defendant's Motion on this claim.

17

### iv.    Constructive Discharge

In ¶ 58 through ¶ 60 of her Complaint, Plaintiff alleges that Defendant constructively discharged her as "a direct and proximate result of the FMLA interference and/or retaliation." (Doc. No. 1-1 at 8).

To establish a claim of constructive discharge, Plaintiff must show that, "1) the employer…deliberately create[d] intolerable working conditions, as perceived by a reasonable person," and 2) the employer did so "with the intention of forcing the employee to quit...." *Moore v. KUKA Welding Sys.,* 171 F.3d 1073, 1080 (6th Cir.1999). Further, "[t]he Supreme Court has explained that constructive discharge requires a showing beyond that of a hostile working environment: to establish 'constructive discharge,' the plaintiff must make a further showing: She must show that the abusive working environment became so intolerable that her resignation qualified as a fitting response." *Pennsylvania State Police v. Suders,* 542 U.S. 129, 134, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004). *E.E.O.C. v. Spitzer Mgmt., Inc.*, 866 F. Supp. 2d 851, 858 (N.D. Ohio 2012) (internal quotation marks omitted).

Defendant responds to Plaintiff's constructive discharge claim in a footnote and argues that Plaintiff's failure to resign from her job negates any claim of constructive discharge. (Doc. No. 30-1 at 32 fn. 21; *See Schmalz v. Northrop Grumman Corp.*, 3:11-CV-145, 2012 WL 1813095, at *11 (S.D. Ohio May 17, 2012), aff'd (Oct. 21, 2013) ("By Plaintiff's own admission, she did not resign and therefore cannot claim constructive discharge." *E.E.O.C. v. Spitzer Mgmt.,* No. 1:06cv2337, 2012 U.S. Dist. LEXIS 44686, at *12, 2012 WL 1095852 (N.D. Ohio Mar. 30, 2012).

Defendant references Plaintiff's deposition in which she states that she never quit her job, and was never going to quit her job. (Ball Tr. 239). Plaintiff argues that Defendant removed her

18

from the schedule, foreclosed her access to the company's e-mail and scheduling system, excluded her from the facility, and failed to pay her, but she does not offer any authoritative support, save a recital of the legal standard, to suggest that these actions amount to a constructive discharge. (Doc. No. 35 at 7).

Further, Plaintiff argues that if "[she] was not actually terminated on or around November 5, 2013, then she was constructively discharged." (*Id.*). However, since the record definitively establishes that Plaintiff never resigned from her job, and since the employee must resign to establish a constructive discharge claim, Plaintiff's claim fails as a matter of law. *See Moore*, 171 F.3d at 1080 ("To constitute discharge, the employer must deliberately create intolerable working conditions, as perceived by a reasonable person, with the intention of forcing the employee to quit *and the employee must actually quit*.") (emphasis added); *See also Roberts v. Segal Co.*, 125 F. Supp. 2d 545, 550 (D.D.C. 2000) ("To establish constructive discharge, plaintiff must show 'that the employer deliberately made working conditions intolerable and drove the employee into an involuntary quit'" (quoting *Katradis v. Dav–El of Washington, D.C.,* 846 F.2d 1482, 1485 (D.C. Cir. 1988) (citation and quotation marks omitted).

Since there is no genuine issue of material fact regarding Plaintiff's claim of constructive discharge, the Court should GRANT Defendant's Motion on this claim.

### v.  FLSA Retaliation

In ¶61 through ¶70, Plaintiff argues that Defendant retaliated against her for requesting FLSA protected lactation breaks by changing her shift, cutting her pay, refusing to allow her to take lactation breaks, and eventually putting her employment "on hold" by terminating her from the online scheduling system. (Doc. No. 1-1 at 9-10).

19

To establish a prima facie case of retaliation under §215(a)(3) of the FLSA, Plaintiff must prove that (1) she engaged in a protected activity under the FLSA; (2) her exercise of this right was known by the employer; (3) thereafter, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected activity and the adverse employment action. *Adair v. Charter County of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006) (citing to *Williams v. Gen. Motors Corp.,* 187 F.3d 553, 568 (6th Cir.1999)).  Further, FLSA retaliation claims are subject to the burden-shifting framework established in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 93 S.Ct. 1917, 36 L.Ed.2d. 668 (1973), wherein (1) the employee proves a prima facie case of retaliation; (2) the employer offers a legitimate non-retaliatory reason for the adverse action; and (3) the employee offers evidence to rebut the employer's reasoning as pretext. *Adair*, 452 F.3d at 489.

Since there is no case law concerning the relevant portions of the PPACA or the FLSA, Defendant analogizes to ADA jurisprudence to support its argument that it did not retaliate against Plaintiff for asserting her rights under the FLSA. (Doc. No. 30-1 at 25).  Plaintiff interpreted Defendant's ADA argument as an assertion of the undue hardship exemption under §207. (Doc. No. 35 at 8.).  Nevertheless,  Defendant was merely illustrating, *in arguendo*, that there is parallel authority between the FLSA and the ADA since the Department of Labor analogized to the ADA to interpret §207(r).[10] (*Id.* at 25-26).  Defendant bridges the gap between ADA jurisprudence and the PPACA since, outside the plain language of §207, there is no clear governing authority concerning an employer's precise statutory obligations. Defendant cites *Hankins v. Gap, Inc.*, 84 F.3d 797, 800 (6th Cir. 1996) to establish that, under the ADA, the employer has the decisive privilege to determine how to accommodate the employee so long as

---

[10] §207(r) carries an "undue hardship exemption that is only available for employers with fewer than 50 employees that meet certain conditions." Fed. Reg. Vol. 75, No. 244 pg. 80,077.

the accommodation is reasonable: "[T]he employer providing the accommodation has the ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide."

Further, Defendant, in its supporting brief, contends that there is no separate cause of action for claims under §207(r), and that the only remedy for breach is injunctive relief through the Department of Labor's administrative proceedings. *See Salz v. Casey's Mktg. Co.,* 11-CV-3055-DEO, 2012 WL 2952998, at *3 (N.D. Iowa July 19, 2012) ("A recent notice from the Department of Labor corroborates Defendant's interpretation and limits an employee to filing claims directly with the Department of Labor.").

Plaintiff argues that the Company was legally required to accommodate her rights under §207(r) on third shift, but admits she knew that the Company could not accommodate those rights on third shift. (Doc. No. 35 at 8; Ball Tr. 197). Defendant argues that it offered to accommodate Plaintiff's request on first or second shift while paying her the third shift differential, and even offered her to switch her to Saturdays in order to meet her needs. (Ball Tr. 249; Patriarca Decl. ¶4; Ball Dep. Exh 18, p.1; Lancaster Tr. 89, 92-95).

Furthermore, Plaintiff argues that Defendant chose to violate her rights despite her continued "complaints" regarding those rights. (Doc. No. 35 at 8). Defendant denies that Plaintiff ever made a formal complaint as required by FLSA guidelines, and cites to Plaintiff's deposition where she testified that, aside from some general complaints, she never made any formal complaints to management while working for the Company.[11] (Ball Tr. 312-313). Nonetheless, even assuming that Plaintiff's complaint did constitute a formal complaint under the FLSA,

---

[11] Plaintiff's deposition reads as follows: "Q. Okay. As you sit here today, can you think of any specific complaints you made to anybody, anybody in management, while you were an employee of Ohio ambulance? A. Not at this time." (Doc. No. 30-1 at 38; Ball Tr. 312-313.).

Defendant rightly points out that there is no private cause of action for retaliation claims arising under §207(r). *See Salz v. Casey's Mktg. Co.,* 11-CV-3055-DEO, 2012 WL 2952998, at *3 (N.D. Iowa July 19, 2012).

Since this Court already established that Plaintiff did not suffer an adverse employment action, and since Defendant offered Plaintiff several reasonable accommodations, Plaintiff's claim of FLSA retaliation should fail. Defendant's proposed accommodations all would have allowed Plaintiff to return to work and to exercise her rights under §207(r). (Ball Tr. 171-72, 197; Ball Dep. Exh. 18 p.1-2; Lancaster Tr. 89, 92-95).

Since there is no genuine issue of material fact regarding Plaintiff's FLSA retaliation claim, the Court should GRANT Defendant's Motion as to this claim.

### vi.    Liability of Individual Defendants

In ¶45 of the Complaint, Plaintiff alleges that "Defendants engaged in conduct prohibited under the FMLA." (Doc. No. 1-1 at 6). In ¶47 of the Complaint, Plaintiff alleges that Defendants, "improperly and unlawfully retaliated against Plaintiff for exercising her rights and protections under the FMLA and regulations promulgated thereunder." (*Id.*). In ¶48 of the Complaint, Plaintiff alleges that, "Defendants willfully, intentionally, and purposely violated Plaintiff's rights under the FMLA, as well as violated the requirements of the FMLA without reasonable grounds." In ¶69 of the Complaint, Plaintiff alleges that, "[her] status as 'on hold' and removal from the electronic scheduling system constitute adverse employment actions taken by Defendants following Plaintiff's engagement in  protected activities." Lastly, in ¶70, Plaintiff alleges that, "Defendants actions were willful, intentional, and malicious."  The preceding sections implicate both the Company and the individual Defendants herein named: Edward Patriarca, Brenda Lancaster, Christine Foster, and Marie Niebes. (Doc. No. 1-1 at 1.).

22

In *Mize v. Mendoza Co*, 2:01-CV-629, 2005 WL 3088526, at *5 (S.D. Ohio Nov. 16, 2005), the court held that, "private-sector supervisors may be held individually liable for violations of the FMLA." Moreover, in *U.S. Dept. of Lab. v. Cole Enterprises, Inc.*, 62 F.3d 775, 778 (6th Cir. 1995), the court determined that, "[M]ore than one "employer" can be responsible for FLSA obligations." Therefore, with respect to the individual Defendants, Plaintiff's FMLA and FLSA claims are subject to the same legal standards referenced in the earlier sections.

Defendant argues that, "For the reasons set forth above, Plaintiff's claims against the individual Defendants fail as a matter of law." (Doc. No. 30-1 at 42.). In support of this argument, Defendant cites *Mize v. Mendoza Co.*, 2:01-CV-629, 2005 WL 3088526, at *4 (S.D. Ohio Nov. 16, 2005), which states that "private-sector employers…exercising sufficient control over the decision to terminate" may be liable for FMLA violations.

First, Defendant points out that, "Plaintiff does not even know whether or not Ms. Foster and Ms. Niebes played any role in the events giving rise to this case." (Ball Tr. 137-138; Foster Tr. 17, 20-21, 24-25.). Next, Defendant alerts the Court that Plaintiff cannot think of anything unfair or unlawful that Mr. Patriarca ever did to her. (Ball Tr. 237-238.). Defendant further argues that, although Plaintiff and Ms. Lancaster had "negative aspects" to their relationship, Ms. Lancaster was not the "decision maker," and therefore is not liable. (Lancaster Tr. 72-73, 76, 83; Patriarca Tr. 40-41.). *See U.S. Dept. of Lab. v. Cole Enterprises, Inc.,* 62 F.3d 775, 778 (6th Cir. 1995) ("More than one "employer" can be responsible for FLSA obligations. Thus, a corporate officer who has operational control of the corporation's covered enterprise is an "employer" under FLSA, along with the corporation itself. One who is the chief executive officer of a corporation, has a significant ownership interest in it, controls significant functions of the

business, and determines salaries and makes hiring decisions has operational control and qualifies as an "employer" for the purposes of FLSA.").

Plaintiff argues that Ms. Lancaster approved her FMLA leave, originally approved and scheduled her return from leave, removed her from the schedule, and informed her that she was trespassing when she reported to work on November 5, 2013. (Doc. No. 35 at 3-4, 7.). Plaintiff further argues that Mr. Patriarca, "refuses to accommodate a request to take lactation breaks on third shift." (*Id.* at 8.). Plaintiff does not mention Ms. Foster or Ms. Niebes anywhere in her Memorandum in Opposition, thus, with respect to those individual Defendants, Plaintiff's claims should fail.

Plaintiff does offer evidence that Ms. Lancaster exercised "operational control" over her FMLA leave, but does not provide evidence that Ms. Lancaster has, "a significant ownership interest [or]…determines salaries…[or] makes hiring decisions." *See Cole Enterprises*, 62 F.3d at 788. Thus, Plaintiff's claims against Ms. Lancaster should fail.

Lastly, although Plaintiff argues that Mr. Patriarca, per his Declaration testimony, "refuses to accommodate" lactation breaks on third shift, the Declaration states only that, "[G]iven the nature of Ms. Ball's requested accommodation, even if she had not taken FMLA leave, the Company would not have been able to accommodate her on third shift." (Doc. No. 30-5 at 2.).  Therefore,  Defendant's argument under the "honest belief" rule negates any claim that Mr. Patriarca retaliated against Plaintiff. (Doc. No. 38 at 14 fn. 5) (*See Donald* 667 F.3d at 763 ("We have adopted the honest belief rule, reasoning that it is not in the interests of justice for us to wade into an employer's decisionmaking process") (citing to *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598-99 (6th Cir. 2007).

For the reasons set forth above, the Court should GRANT Defendant's Motion for Summary Judgment on all counts, both with respect to individual Defendants Edward Patriarca, Brenda Lancaster, Christine Foster, and Marie Niebes, and as to Ohio Ambulance.

### a. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

#### i. FMLA interference

Plaintiff moved for Summary Judgment on her first, second, and fifth claims. In ¶38 through ¶45 of her Complaint, Plaintiff alleges that Defendant engaged in conduct prohibited by the FMLA, specifically that Defendant failed to notify Plaintiff of her rights under FMLA, improperly removed her from the schedule, instructed her to leave the Company's premises, unlawfully interfered with her right to return to work, and failed to comply with FMLA regulations. (Doc. No. 1-1 at 6).

Plaintiff argues that Defendant interfered with her FMLA leave by not allowing her to return to third shift on November 5, 2013, and thereafter. (Doc. No. 31 at 4.). To bolster this claim, Plaintiff argues that Defendant deactivated her computer account, removed her from the schedule, told her that her employment was "on hold," and refused to accommodate her protected rights under the PPACA/FLSA. (Ex. 1 pg. 140, 143, 163-164; Ex. 6 pg. 4; Ex. 7). Further, Plaintiff contends that Defendant asked her to leave the premises, and told her that it would hold her liable for trespassing if she did not leave. (Doc. No. 31 at 4.). Plaintiff admits that Defendant granted her all twelve weeks of FMLA leave. (*Id* at 3.). Nevertheless, Plaintiff argues that Defendant denied her the right to return to the same pre-leave position and pre-leave pay, which, in her estimation, constitutes FMLA interference *per se*. (*Id*.).

Plaintiff cites *Edgar* and 29 C.F.R. §825.220(b) to develop her argument that failure to reinstate an employee after FMLA leave amounts to a prima facie denial of that employee's statutory rights. (Doc. No. 31 at 5) (citing to *Edgar*, 443 F.3d at 507). However, *Edgar* also states that "the FMLA is not a strict-liability statute." *Edgar*, 443 F.3d at 507. Defendant points out that Plaintiff fails to mention that it originally scheduled her to return to her usual third shift schedule on October 26, 2013. (Ball Tr. 114-115, 120-121, 128; Ball Dep. Exh. 17; Lancaster Tr. 55-56; Doc. No. 36 at 7.). The extent of Plaintiff's argument for why she is entitled to relief on the interference claim is a mere pronouncement stating that "there is no dispute that Ms. Ball was denied a substantial right under FMLA"—a statement Plaintiff fails to support with any evidence or reference to legal authority. (Doc. No. 31 at 7.). Furthermore, Plaintiff fails to mention, at any juncture, that Defendant felt it could not accommodate her request to express breast milk on third shift. (Doc. No. 36 at 7).

Defendant argues that Plaintiff's work as a paramedic requires swift, and potentially life-saving, response. (Doc. No. 30-1 at 9; Ball Tr. 45-47.).  Defendant did not unequivocally deny Plaintiff's request to express breast milk while on-call—it merely asserted that, in accordance with its business needs, and to comply with Plaintiff's request, it would have to move Plaintiff to first shift. (Ball Tr. 186-189, 197; Ball Dep. Exh. 18, pg. 1,3; Lancaster Tr. 79, 81-82, 85, 117-18, 140, 162-164; Lancaster Dep. Exh 12; Patriarca Tr. 29-31; Dozier Tr. 34-36; Doc. No. 36 at 7.).  Moreover, Plaintiff readily admits that Defendant had originally put her on the schedule for November 5, 2013, which, combined with the fact that Defendant granted her an extra week of leave, hinders the theory that it interfered with her return from FMLA leave. (Ball Tr. 116, 222-223)

Plaintiff's lone legal argument, aside from a recital of the legal standard in *Edgar*, is a plain statutory reading of 29 C.F.R. §825.215(e)(2), which states that an employer must entitle an employee returning from FMLA leave to the same, or an equivalent, position, pay, and terms and conditions of employment. (Doc. No. 31 at 7.). However, even a plain reading of §825.215(e)(2) (a full transcript of which is included in Plaintiff's Motion) reveals that "[t]he employee is *ordinarily* entitled to return to the same shift or the same or an equivalent work schedule" (emphasis added). Plaintiff argues that Defendant's proposed work schedule was not "equivalent" because it was for five days a week, as opposed to three, and was for eight hours per shift, as opposed to twelve. (Doc. No. 31 at 9.). Further, Plaintiff argues that Defendant's proposed schedule would have cut her pay by "nearly…$5.00/hour," (*Id.*) however, Defendant eventually offered Plaintiff the third shift pay differential on either first or second shift. (Ball Tr. 249; Ball Dep. Exhs. 23, 24; Patriarca Decl. ¶3.).

Plaintiff's argument that shift changes are an adverse employment action fails because the case she cites entailed a municipality that switched police officers to a rotating schedule at a lower rate of pay. *See Ginger v. District of Columbia*, 527 F.3d 1340, 1344 (D.C. Cir. 2008). Originally, Defendant offered Plaintiff a lower rate of pay because first shift does not receive the third shift pay differential. (Doc. No. 36 at 8.). Nevertheless, Defendant did not offer Plaintiff a "rotating" schedule, and it eventually offered to pay her the third shift differential on either first or second shift. (Ball Tr. 249; Ball Dep. Exhs. 23, 24; Patriarca Decl. ¶3.).  Plaintiff fails to mention anywhere that, in fact, it was her request of November 1, 2013, to express breast milk on third shift that altered the terms and conditions of her employment.

In response to Plaintiff's request, Ms. Lancaster transmitted an e-mail to Plaintiff on November 4, 2013, indicating that Defendant was willing to switch her to first shift upon her

scheduled return. (Ball Tr. 171-172; Ball Dep. Exh 18, pg. 2).  When Plaintiff refused, Defendant states that it needed time to explore a solution for how to accommodate Plaintiff's §207(r) request. (Lancaster Decl. ¶6; Lancaster Dep. Exh. 12, sixth row from the top.). Since Plaintiff cannot rebut Defendant's reasoning why it could not return her to third shift, and since the Court finds Defendant's justification reasonable, Plaintiff's FMLA interference claim should fail. *See Jaszczyszyn v. Advantage Health Physician Network*, 504 Fed. Appx. 440, 447 (6th Cir. 2012) ("the interference theory does not convert the FMLA into a strict-liability statute because 'interference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct.").

Since Plaintiff does not meet the burden of proving that no reasonable jury could find in Defendant's favor, the Court should DENY Plaintiff's Motion on her claim of FMLA interference.

### ii.    FMLA Retaliation

In ¶46 through ¶49 of her Complaint, Plaintiff alleges that Defendant retaliated against her for asserting her rights under FMLA by improperly removing her from the schedule, denying her the right to take lactation breaks, and unlawfully advising her that her employment was "on hold." (Doc. No. 1-1 at 7).

To support her argument that Defendant retaliated against her for exercising her FMLA rights, Plaintiff cites the "mixed-motive" theory described in *Hunter v. Valley View Local Schools*, 579 F.3d 688, 694 fn. 2 (6th Cir. 2012), which is scarcely alluded to in a footnote and states that "the standard depends not on the type of evidence presented (direct versus circumstantial), but on the type of claim brought (single-motive versus mixed-motive)." (Doc.

No. 31 at 11.).  Plaintiff argues that Defendant had a "mixed-motive" to both interfere with Plaintiff's return from FMLA leave, and to refuse to accommodate her request under §207(r) as retaliation for taking FMLA leave. (*Id* at 10.).  However, Plaintiff misinterprets the "mixed-motive" standard, which states that, "[T]he very premise of a mixed-motives case is that a legitimate reason [for the adverse action] was present…" *Price Waterhouse v. Hopkins*, 490 U.S. 228, 252 (1989). Since Plaintiff does not allege that any "legitimate reason" was present for any adverse action taken by Defendant, the mixed-motive theory does not apply here.

Plaintiff argues that, under the FMLA, Defendant retaliated against her by refusing to allow her to return to the same shift she was on prior to FMLA leave. (Exh. 8; Doc. No. 31 at 3.). Plaintiff also argues that, "[T]he language is clear that if an employee's use of FMLA leave is used as **a** negative factor it is a violation of the statute" (emphasis in original) (internal quotation marks omitted). (Doc. No. 31 at 11) (citing to 29 C.F.R. §825.220(c).).

Defendant argues that Plaintiff's §207(r) request had nothing to do with any rights or protections under the FMLA. (Doc. No. 36 at 9.). Also, Defendant emphasizes Plaintiff Ball's deposition in which she agreed that her lactation breaks had to be uninterrupted, and explained that she knew the Company could not accommodate her request on third shift. (*Id* at 9-10; Ball Tr. 197, 216). To support Defendant's argument that Plaintiff's failure to return was the result of her refusal to accept any of the proposed accommodations, Defendant argues that it had an "honest belief" that it could not accommodate her request on third shift. *See Donald*, 667 F.3d at 763 ("We have adopted the honest belief rule, reasoning that it is not in the interests of justice for us to wade into an employer's decisionmaking process") (citing to *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598-99 (6th Cir. 2007).

29

Defendant argues that, after researching the law concerning lactation breaks, it thought that the breaks had to be uninterrupted. (Lancaster Tr. 79, 81, 117-18; Patriarca Tr. 29-31; Dozier Tr. 34.).  Further, Defendant believed that the back of an ambulance was not a sanitary location to express breast milk under FLSA §207(r). (Doc. No. 36 at 11).

Moreover, Defendant's central concern with accommodating Plaintiff's request on third shift was that Plaintiff's ambulance was the only one on duty for a substantial interval of time. (Dozier Tr. 35-36.).  Defendant was concerned that Plaintiff's request for breaks had the potential to disrupt the service that Defendant provides its customers—specifically, rapid and on-call emergency response. (Doc. No. 36 at 11.). Since Defendant did not want to summarily deny Plaintiff's rights under the FLSA, it offered her the option to move to first or second shift. (*Id* at 13).

Plaintiff's argument fails because she does not offer any evidence that Defendant retaliated against her for taking FMLA leave, or that Defendant's reason was pretext. Conversely, Defendant appears to have gone above and beyond the statutory requirements by allowing Plaintiff an extra week of leave and by offering her several return options in the wake of her last-minute §207(r) request.

Since Plaintiff does not meet her burden of proving that no reasonable jury could find in Defendant's favor, the Court should DENY Plaintiff's Motion on her FMLA retaliation claim.

### iii.    **FLSA Retaliation**

In ¶61 through ¶70, Plaintiff argues that Defendant retaliated against her for requesting FLSA protected lactation breaks by changing her shift, cutting her pay, refusing to allow her to take lactation breaks, terminating her from the online scheduling system, and eventually putting her employment "on hold." (Doc. No. 1-1 at 9-10).

Plaintiff argues that the above conduct amounts to retaliation against her for attempting to exercise her right to lactation breaks under the FLSA. (Doc. No. 31-1 at 11). To support this claim, Plaintiff inserts a bare recitation of the burden-shifting framework developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), but offers no supporting evidence to show that she ever made a prima facie case of retaliation whereby the burden would shift to Defendant to tender a legitimate non-retaliatory reason for the adverse action. (Doc. No. 31 at 11.).

Defendant argues, rightly, that Plaintiff offers no evidence to support her claim that, "she was terminated and it was immediately after she attempted to return from FMLA leave." (Doc. No. 31 at 12; Doc. No. 36 at 19). Defendant then goes on to argue that Plaintiff does not offer enough evidence to make an initial prima facie case to trigger the *McDonnell-Douglas* burden-shifting framework, and that even if she could, she would not be able to prove that Defendant's non-retaliatory reason was pretext. (Doc. No. 36 at 17-18).

Since Plaintiff does not cite any evidence, legal authority, or even the appropriate legal framework used to analyze retaliation claims under §215(a)(3), the Court need not consider this matter further.

Since Plaintiff does not meet her burden of proving that no reasonable jury could find in favor of Defendant, the Court should DENY Plaintiff's Motion on her claim of FLSA Retaliation.

## IV.   CONCLUSION

Viewing the facts in the light most favorable to Plaintiff, Defendant offered evidence showing that, with respect to all of Plaintiff's claims, there is no genuine issue of material fact, and Defendant should prevail as a matter of law. Therefore, the Court should grant Defendant's

31

Motion for Summary Judgment on all counts. Conversely, with respect to those claims that Plaintiff brings before the Court on her Motion for Partial Summary Judgment, Plaintiff does not carry her burden of producing evidence showing that, as a matter of law, no reasonable jury could find for Defendant. Therefore, the Court should deny Plaintiff's Motion for Partial Summary Judgment on counts one, two, and five.

For the foregoing reasons, the Court should GRANT Defendant's Motion for Summary Judgment (Doc. No. 30) and DENY Plaintiff's Motion for Partial Summary Judgment (Doc. No. 31).

  /s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Dated:  June 15, 2015.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1).  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).